IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 3:09-CR-129 |
| ) | (VARLAN/SHIRLEY) |
| STEPHEN "STEVIE" MAYES, ) | |
| ) | |
| Defendant. ) | |

## ORDER OF DETENTION PENDING TRIAL

This case came before the Court on October 16, 2009, for a detention hearing pursuant to 18 U.S.C. 3142(f). Assistant United States Attorney Melissa M. Millican appeared on behalf of the Government. Attorney Howard J. Weintraub represented the Defendant, who was also present. The Defendant sought release on conditions including electronic monitoring, that he live with his sister in Bean Station, Tennessee, and that his sister and his wife both put up a property bond on their homes. The Government sought pretrial detention, arguing that no conditions of release existed that would reasonably assure the safety of the community or the Defendant's presence at trial.

The Defendant is charged [Doc. 3] with one count of possession of a detectable amount of marijuana with intent to distribute and one count of being a felon in possession of firearms. At the detention hearing, the government presented the testimony of DEA Task Force Officer Kevin Kimbrough. Officer Kimbrough testified that the Defendant had a 1992 drug conviction in Hamblen County, Tennessee, for possession of two Dilaudid pills. Kimbrough was

1

involved in the investigation of the Defendant for drug distribution, and in 2008, he received information from a confidential informant that the informant had seen the Defendant with firearms while dealing drugs. The Defendant's home was searched in October 2008, and eighteen firearms were seized from his house. Kimbrough testified that on October 13, 2009, he met with Charles Brandon "Bubba" Long and made a recording of thirty-five messages left on Long's cellular telephone between September 10 and 15, 2009. These messages were played for the Court. The bulk of these messages were from the Defendant, who at one point threatened to "blow [Long's] brains out." In some of the messages, the Defendant stated that he would be or was waiting for Long at various locations, including at Long's house. Kimbrough stated that he executed a second search warrant at the Defendant's house on the day of the Defendant's arrest for the instant offenses and seized a .22 caliber revolver and ammunition. He opined that society and certain individuals, namely the confidential informant and Mr. Long, would not be safe if the Defendant were released pending his trial.

On cross-examination, Officer Kimbrough testified that the telephone messages from the Defendant, who is Long's uncle, were precipitated by the Defendant learning of Long's affair with the Defendant's wife Lori Mayes, when the Defendant discovered explicit text messages from Long on his wife's cellular telephone. Kimbrough agreed that Long never took out a protective order against the Defendant. Kimbrough knew of three occasions when local police had responded to calls from Long: (1) when the Defendant was waiting outside Long's home, (2) when the Defendant had tried to force Long off the road, and (3) when the Defendant followed Long and his son to the son's school. No police reports were filed regarding these incidents.

Officer Kimbrough testified that Lori Mayes told him of a violent incident with the Defendant five or six months earlier and before the text messages were discovered. Lori Mayes told Kimbrough that the Defendant said he would rather see her dead than out on the roads drunk and then he moved toward where he kept a gun. Kimbrough stated that a confidential informant had also told him some six months ago that the Defendant had made threats to kill his wife before he went to federal prison and that the Defendant had pointed a pistol at his wife in their residence. Kimbrough said that after learning this information, he went to the United States Attorney's Office (USAO) seeking the Defendant's arrest but that the USAO did not take action at this time.

Officer Kimbrough also testified that in December 2008 or early 2009, he learned that the Defendant had threatened Ricky Howard by showing a sum of money to one of Howard's employees and indicating that he had placed a bounty on Howard's head. Kimbrough also notified the USAO and his co-case agent of this threat. Kimbrough stated that the Tennessee Bureau of Investigation was brought in to investigate the threat to Howard. Kimbrough stated that he was aware that in the year following the October 2008 search of the Defendant's home, the USAO and defense counsel were engaged in negotiations about an information and plea in this case. Although Kimbrough stated that he had information that the Defendant had also made verbal threats against his daughter Stephanie Mayes, Kimbrough agreed that he spoke with Stephanie Mayes on the day of the Defendant's arrest, that she did not indicate that she felt threatened, and that she said she wanted the Defendant released.

Officer Kimbrough stated that in the October 2009 search of the Defendant's home, the unloaded gun was found in a purse in the closet of the bedroom shared by the

3

Defendant and Lori Mayes. Lori Mayes told him that she had hidden the gun from the Defendant. Ammunition was found in a box in the kitchen. In conclusion, Kimbrough stated that he felt obligated to keep pressing the issue of the Defendant's arrest because he felt the Defendant's threats were escalating, he knew the Defendant had access to a gun, and he was concerned for the safety of Lori Mayes and Charles Brandon Long. On redirect examination, Officer Kimbrough stated that a local police officer had told him that the Defendant had the reputation that he would "cut your guts out" if you crossed him.

Defense counsel proffered that Lori Mayes still resides in the marital home but that the Defendant could live thirty-minutes away with his sister Rhonda Daughtery in Bean Station, Tennessee, if released. He offered that the Defendant could wear an electronic monitoring bracelet. Defense counsel candidly stated that while Lori Mayes would not testify that she felt totally comfortable with the Defendant's release, she had visited the Defendant in jail and professed her love for him. Lori Mayes also relayed that she was willing to secure the Defendant's release with her residence, knowing that she would lose her home if the Defendant violated the conditions of his release to include contacting her. Ms. Daughtery was also willing to have a property bond on her home.

The Government argued that the Defendant's possession of weapons and his repeated threats to members of the community demonstrate that he is a danger. It also argued that he is a flight risk due to the lengthy sentence he faces. The Defendant argued that despite allegedly knowing of threats by him in early 2009 and again six months prior to his arrest, the Government made no move to arrest him at those times. Instead, he had remained in his home and uncharged for a year and had not carried out the alleged threats or attempted to flee.

Following a detention hearing, a defendant may be detained pending trial if no condition or combination of conditions exist that will reasonably assure (1) the defendant's appearance as required in court and (2) the safety of the community or any person in it. 18 U.S.C. § 3142(e). In the present case, the detention issue turns primarily upon whether any combination of conditions of release could reasonably assure the community's safety. The government must establish the lack of such conditions by clear and convincing evidence.

In light of the evidence presented and the Defendant's proffer, the Court finds by clear and convincing evidence that there are no conditions of release that could reasonably assure the safety of the community. In making this determination, the Court has considered the factors enumerated in 18 U.S.C. § 3142(g). Factor one looks to the nature and circumstances of the offense charged, including whether it is a crime involving a controlled substance or a firearm. See 18 U.S.C. § 3142(g)(1). Here, the charges against the Defendant involve both a controlled substance and a firearm. Accordingly, the Court finds that this factor weighs in favor of detention.

Second, the Court finds that factor two, the weight of the evidence against the Defendant, to weigh neither for or against release, given that the Defendant is presumed innocent. See 18 U.S.C. § 3142(g)(2). The third factor for the Court to consider examines the history and characteristics of the defendant, including "the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings." 18 U.S.C. § 3142(g)(3)(A). The Court finds that the Defendant's family ties, length of residence in the community,

5

Case 3:09-cr-00129-TAV-CCS   Document 16   Filed 10/23/09   Page 5 of 8   PageID #: 47

community ties, financial resources, physical and mental condition, and record of appearance at court proceedings all weigh in favor of release. On the other hand, the Court also finds that all of these factors speak to whether an individual is a flight risk. The remaining (g)(3)(A) factors, which reflect upon whether a person is a danger, all weigh in favor of detention in this case. The Defendant's past conduct shows a history of repeated threats to others, which seem to be escalating. The Defendant's criminal history reflects that he has two prior felony convictions, one of which is for drugs. Moreover, with regard to his history of drug abuse, the Defendant reported using marijuana regularly.

The Court must also consider whether, at the time of the current offenses, the defendant was on probation, parole, or pretrial release. See 18 U.S.C. § 3142(g)(3)(B). This is not the case and, thus, this factor argues in favor of release.

Finally, with respect to the "nature and seriousness of the danger to any person or the community that would be posed by the person's release," the Court finds that this factor also weighs in favor of detention. See 18 U.S.C. § 3142(g)(4). The Court finds that the Defendant has made threats to Charles Brandon Long, Lori Mayes, and Ricky Howard. Additionally, given the testimony at the detention hearing, the confidential informant may also be at risk. While the evidence of the individual threats could be stronger, the Court finds that the totality of the evidence presented at the detention hearing reveals that the Defendant has threatened numerous people on numerous occasions, that he tends to threaten others whenever he believes he has been crossed, and that his threats appear to be escalating. In addition, the Defendant has two prior felony convictions and a history of marijuana use, which brings him into regular contact with drug dealers. The Defendant also has a history of possessing firearms. Thus, the Court finds
6

Case 3:09-cr-00129-TAV-CCS   Document 16   Filed 10/23/09   Page 6 of 8   PageID #: 48

that factor (g)(4) weighs decidedly in favor of detention.

Finally, the Court has considered the Defendant's proffered conditions that he live with his sister some thirty minutes away from his wife and Mr. Long, that he submit to electronic monitoring, and that both his wife and his sister put up their homes to secure his release. The Court finds that a property bond on his wife's home is questionable in this case because that same property is subject to forfeiture under the Indictment. Moreover, the Court finds no evidence that the Defendant's sister or his wife have been able to control the Defendant's behavior in the past. Moreover, the Court is concerned that Lori Mayes might not report a violation of the Defendant's conditions for fear that she might lose her house. The Court also finds that the wearing of an electronic bracelet cannot prevent indirect threats, telephone threats, access to guns and ammunition, and drug use or sales. Finally, the Court believes the burden placed on the Defendant's probation officer to attempt to warn potential victims if the Defendant left his home is too great. The Court finds that the proposed conditions do not reasonably assure the Court of the safety of the community.

The Court does not find the Defendant to be a flight risk, but it does find the danger posed to the community from the Defendant's release to be great. Accordingly, the Court concludes that no condition or combination of conditions of release exist that could reasonably assure the safety of the community. Therefore, the Defendant is **ORDERED** to remain in detention until his trial. The Defendant is committed to the custody of the Attorney General or his designated representative for confinement in a correction facility separate, to the extent practicable, from persons awaiting or serving sentences or being held in custody pending appeal. The Defendant shall be afforded a reasonable opportunity for private consultations with defense

counsel. On order of a court of the United States or on request of an attorney for the government, the person in charge of the corrections facility shall deliver the Defendant to the United States Marshal for the purpose of an appearance in connection with a court proceeding.

**IT IS SO ORDERED.**

ENTER:

<u>    s/ C. Clifford Shirley, Jr.    </u>

United States Magistrate Judge

8